### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR: 221-018 |
| | ) | |
| LARISA KHARITON | ) | |
| | ) | |

### PLEA AGREEMENT

Defendant Larisa Khariton, represented by her counsel Brian Joseph Huffman, Jr., and the United States of America, represented by Department of Justice Trial Attorneys Frank G. Rangoussis and John-Alex Romano, and Assistant United States Attorney Alejandro V. Pascual IV, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1.    Guilty Plea

Defendant agrees to enter a plea of guilty to Count One of the Indictment, which charges a violation of 18 U.S.C. § 371.

2.    Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan, or two or more persons in some way agreed to try to accomplish a shared and unlawful plan to defraud the United States, that is, to cheat the Government out of money or property or to interfere with any of its lawful Governmental functions by deceit, craft, or trickery; (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it; (3) during the conspiracy, one of the conspirators knowingly engaged in

at least one overt act as described in the indictment; and (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements necessary to prove the object of the conspiracy related to Visa Fraud are: (1) the Defendant presented an application required by the immigration laws or regulations of the United States; (2) the Defendant knew the application contained a false statement; (3) the false statement concerned a material fact; and (4) the statement was made under oath or as permitted under penalty of perjury.

The elements necessary to prove the object of the conspiracy related to Harboring Aliens are: (1) the alien remained in the United States illegally; (2) the Defendant knowingly concealed the alien, harbored the alien, or shielded the alien from detection within the United States; (3) the Defendant either knew or acted in reckless disregard of the fact that the alien remained in the United States in violation of law; and (4) the Defendant's motive was commercial advantage or private financial gain.

The elements necessary to prove the object of the conspiracy related to Transporting Aliens are: (1) the alien remained in the United States in violation of law; (2) the Defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of law; (3) the Defendant transported the alien within the United States to further the alien's unlawful presence; and (4) the Defendant's motive was commercial advantage or private financial gain.

Defendant's initials _L.K._

The elements necessary to prove the object of the conspiracy related to Encouraging and Inducing Aliens to Reside in the United States in Violation of Law are: (1) the Defendant encouraged or induced an alien to reside in the United States; (2) the alien's residence in the United States was in violation of law;  (3) the Defendant knew or recklessly disregarded that the alien's residence in the United States would be in violation of law; and (4) the Defendant's motive was commercial advantage or private financial gain.

Defendant agrees that she is, in fact, guilty of this offense.  Defendant agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

a.      Defendant is a native of Russia and is a naturalized United States citizen.  Defendant and her husband, Jon Clark (Clark), operate Educational World, Inc. (hereinafter, "Ed World").  Clark and Ed World are also defendants in the above-referenced case.

b.      Defendant incorporated Ed World in 1996 in the state of Ohio.  Clark joined Ed World in 2002.  In 2005, defendant and Clark registered Ed World as a corporation in Florida with a stated purpose of "Educational Services, Placement." At all times, defendant and Clark were the only employees of Ed World and sole corporate officers who exercised exclusive control over the entity. Since at least 2014, Ed World maintained its principal place of business in defendant's and Clark's personal residence in North Port, Florida.  At all times relevant to the conspiracy, defendant was the President and Clark the Vice President of Ed World.

3

Defendant's initials _I.K._

c.     Defendant and Clark established and maintained two email addresses utilized to execute Ed World's lawful and unlawful activities, identified as infoedworld@gmail.com and edworld93@gmail.com. Defendant and Clark used these email addresses to communicate with co-conspirators in Regal Hospitality Solutions, LLC (RHS) and with others seeking employment and visas to remain in the United States.   At all times, defendant and Clark used these email addresses interchangeably and both had access to these accounts.

d.     In 2015, defendant and Clark, on behalf of Ed World, entered in an agreement with RHS, (the Commission Agreement), whereby RHS agreed to pay defendant and Clark, through Ed World, a commission for each employee that defendant and Clark recruited to work at RHS. The Commission Agreement required RHS to pay Ed World $0.20 for every hour worked by a laborer recruited by defendant and Clark, through Ed World.

e.     Defendant communicated directly with various persons associated with RHS, including but not limited to the other defendants in the above referenced case, Sarigs (Sam) Makaryan, Samvel Nikoghosyan, Karen Makaryan, Artur Grigoryan, Armen Arepetyan, Fremie Balbastro, and Jason Hill (collectively, RHS defendants) about various matters including issues related to commission payments and fraudulent tourist visas for alien laborers working for RHS. During the relevant time period, Karen Makaryan was the president, Sam Makaryan was the chief executive officer, and Samvel Nikoghosyan was the chief operating officer of RHS. Fremie Balbastro, Armen Arepetyan, and Artur Grigoryan were area managers and Jason

4

Defendant's initials _L. K._

Hill was a supervisor for RHS.  In one email from Defendant dated on or about October 16, 2015, to Karen Makaryan, Sam Kakaryan, Nikoghsyan, Grigorian, and Ayraapetyan, Defendant instructed them to "give to [job] applicants [Clark's] phone number . . . instead of mine."

      f.      Through discussions with RHS officers and managers, defendant knew at all times relevant here that RHS entered into contracts with hotels to provide hospitality-related businesses with laborers to work in housekeeping, retail, and food service positions.  Defendant knew that RHS had contracts with hotels and restaurants in, among other states, Georgia, South Carolina, Alabama, and Colorado. To fill those positions, defendant conspired with Clark and the RHS defendants to hire non-U.S. citizens knowing that the non-U.S. citizens were not authorized to work for RHS in the United States, including at hotels and resorts within the Southern District of Georgia.

      g.      Defendant, Clark, Ed World, and the RHS defendants encouraged and induced alien laborers on expiring and expired J-1 visas to obtain B-2 tourist visas and to work in the United States for RHS, knowing that employing such alien laborers on B-2 tourist visas was illegal.

      h.      Defendant's, Clark's and Ed World's role in the conspiracy was to recruit alien laborers to work for RHS, including those who lacked legal authorization to work for RHS in the United States, and to also obtain fraudulent B-2 tourist visas for RHS' alien laborers.

5

Defendant's initials _L. K._

i.      During the time period named in the indictment, non-U.S. citizens who lacked legal authorization to work for RHS in the United States emailed Ed World seeking assistance with finding employment in the United States.  Defendant and Clark responded by referring the non-U.S. citizens to RHS for work and informing them that their name would be placed on an H-2B petition.  The H-2B program allows U.S. employers, such as RHS, to use foreign nationals to temporarily fill nonagricultural seasonal or peak need jobs in the United States that could not be filled by U.S. citizens.  A U.S. employer, or authorized U.S. agent, must file, among other things, a Form I-129 (Petition for a Nonimmigrant Worker) on a prospective worker's behalf.  Additionally, defendant and Clark told the non-U.S. citizens that, in the meantime, they should obtain a B-2 tourist visa to ostensibly keep a legal status in the United States while waiting for the H-2B visa.  Defendant, Clark, and Ed World charged the alien laborers approximately $650 for the cost of preparing and filing the paperwork for the B-2 tourist visa.

j.      The RHS defendants then hired the non-U.S. citizens who lacked legal authorization to work for RHS in the United States.  RHS then paid Ed World their commission based on hours worked by the alien laborers.

k.      For example, in or around April 2015, defendant Fremie Balbastro hired J.D., a person who lacked work authorization in the United States.  Defendant Fremie Balbastro hired J.D. after receiving an email from Ed World advising RHS that a tourist visa had been submitted for J.D.

6

Defendant's initials _L. K._

l.      In another example, in or around November 2016, Ed Word replied to an email from non-U.S. citizen S.A. who asked about her "application of (sic) work under B2 Visa." Ed World responded that the application on her behalf was submitted and referred S.A. to defendant Artur Grigoryan with instructions to "send him a text message" and to "[r]efer that you are from Educational World." Defendant, Clark and Ed World, using the practices described herein, obtained a fraudulent B-2 tourist visa for S.A. in or around November 2016 and RHS illegally employed S.A. between in or around January 2017 through in or around May 2017.

m.      In other circumstances, the RHS defendants referred their current employees who lacked legal authorization to work for RHS in the United States to defendant, Clark and Ed World for the purpose of getting those employees B-2 tourist visas. Again, under this situation, defendant, Clark and Ed World charged the alien laborers $650 for the cost of preparing and filing the paperwork for the B-2 tourist visa.

n.      For example, in or around February 2015, defendant Fremie Balbastro advised non-U.S. citizen R.T. to apply for a B-2 tourist visa and provided R.T. with the contact information for defendant, Clark and Ed World. Thereafter, defendant, Clark and Ed World obtained a fraudulent B-2 tourist visa using the practices described herein knowing that R.T. was not a tourist, but rather an RHS employee.

o.      In another example, on or about November 23, 2016, defendant Artur Grigoryan emailed defendant stating that he had hired three new employees (P.G., L.A.G., and P.C.) in Alabama and "asked them to contact [defendant] for the visa

7

Defendant's initials _L. K,_

details." Using the practices described herein, defendant, Clark and Ed World obtained fraudulent B-2 tourist visas for all three RHS employees.

      p.    By obtaining the tourist visa, it made it easier for all of the defendants to conceal their criminal conspiracy because it provided the alien laborers with an illusion of legal status in the United States.

      q.    Defendant, Clark and Ed World, with RHS defendants' knowledge, prepared and submitted applications for the B-2 tourist visas on the Form I-539, which contained false and misleading statements designed to indicate that the alien laborers intended to obtain the B-2 visa for the purpose of engaging in tourism and that the aliens were complying with United States immigration laws.

      r.    In preparing the Form I-539, defendant, Clark and Ed World, without the applicants' knowledge, forged the applicants' signatures, in some cases falsely listed Ed World's address in North Port, Florida as that of the applicants, and left blank the portion of the form used to identify the preparer of the form. Defendant, Clark and Ed World also used a standard template with stock language to prepare and include letters with the B-2 applications that contained false and misleading statements designed to indicate that the applicants sought the B-2 visa for tourism purposes and were complying with immigration laws. For example, almost all the letters falsely claimed: that the applicant had friends located in different states who invited the applicant to travel there and visit; that the applicant intended to visit particular attractions (such as Disney World in Florida); and that the applicant was not violating her immigration status.

8

Defendant's initials _L. K._

s.     Defendant, Clark and Ed World used these practices to conceal from the U.S. Citizenship and Immigration Services (USCIS) that defendant, Clark, and Ed World, were the true preparers of the B-2 visa applications and that the non-U.S. citizens were not tourists, but rather laborers working unlawfully or intending to work unlawfully for defendant RHS.

t.     Defendant and Clark were both directly involved in communicating with non-U.S. citizens and in the preparation of the B-2 tourist visa applications.  For example, defendant, a non-native English speaker, used a computer to complete the I-539 forms and the letters that accompanied the forms.  Clark, a native English speaker, checked the documents for errors, and also took the documents to the post office to mail.  Likewise, defendant communicated by email with the non-U.S. citizens, and Clark reviewed the emails for proper English.

u.     Defendant kept track of the fraudulent B-2 applications and provided the status of the fraudulent B-2 tourist visas to the RHS defendants.  Defendant also kept track of which alien laborer was referred to RHS for purposes of keeping track of how much RHS owed Ed World in commission payments. In other circumstances, RHS employees would email defendant, Clark and Ed World with the status of the B-2 tourist visas of its employees.  For example, on or about September 11, 2015, defendant Samvel Nikoghosyan, emailed defendant, Clark and Ed World, an expired B-2 visa belonging to RHS employee S.M., which had been valid from in or around November 2014 to in or around April 2015.  S.M. worked for RHS without legal authorization between in or around January 2015 and in or around November 2016.

9

Defendant's initials _L. R._

v.     Defendant, Clark, and Ed World had a financial incentive in the conspiracy in that the sooner the alien laborers began working for RHS, the sooner they would begin receiving commission payments.  Likewise, RHS and the RHS defendants had a financial incentive in the conspiracy in that that it cost less to employ persons without legal status for work performed.  Additionally, by hiring alien laborers, RHS could expand its operations by entering into contracts with additional hotels and resorts.

w.     Defendant also warned the RHS defendants about the dangers of employing non-U.S. citizens.  For example, on or about November 11, 2015, defendant emailed Sam Makaryan (CEO of RHS) concerning commission payments by defendant RHS to Ed World.  In that email, defendant warned Sam Makaryan that it was "dangerous" for RHS to keep so many of its alien employees on B-2 visas.

x.     Between in or around 2014 and in or around 2017, in furtherance of the conspiracy, Defendant, Clark, Ed World, RHS, and the RHS defendants and others agreed to, and did, encourage and induce non-U.S. citizens, who lacked work authorization for RHS, to reside in the United States by, among other things, encouraging them to obtain B-2 tourist visas and/or to work in the United States for RHS, knowing that obtaining the B-2 tourist visa was fraudulent and that employing such persons was illegal.  Defendant and her co-conspirators did this to make money in that they used workers without work authorization to personally profit from the contracts entered into with the hotels and resorts.

10

Defendant's initials _L. K_

y.    As part of the conspiracy, RHS and the RHS defendants shielded or otherwise concealed the non-U.S. citizen laborers who lacked work authorization by arranging and providing housing and transportation to non-U.S. citizens who were not authorized to work for RHS.  Defendant knew that RHS provided housing and transportation to the non-citizens RHS employed.

z.    Defendant knew that by engaging in the conduct described here, she and her co-conspirators used deceitful and dishonest means to impede, impair and obstruct the lawful Government functions of: (1) USCIS to administer and enforce the regulations and laws related to the hiring, employment, and presence of aliens in the United States and to administer and enforce the regulations and laws relating to the issuance of B-2 non-immigrant visas; (2) Immigration and Customs Enforcement to enforce the regulations and laws relating to transporting and harboring unlawfully present aliens and encouraging or inducing such aliens to remain in the United States in violation of law; and (3) the U.S. Department of Labor to administer and enforce the regulations and laws relating to the implementation of the H-2B non-immigrant visa program.

aa.    Defendant agrees that the objects of the conspiracy as alleged in Count One of the indictment were completed and that the Government would have proven the foregoing facts, among others, beyond a reasonable doubt at any trial on the merits.

11

Defendant's initials _Ä, K_

3.      Possible Sentence

Defendant's guilty plea will subject her to the following maximum possible sentence:  5 years' imprisonment, 3 years' supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. The Court additionally must impose a $100 special assessment per count of conviction.

4.      No Promised Sentence

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range.  The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the Government, the U.S. Probation Office, or anyone else.  The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw her plea of guilty if she receives a more severe sentence than she expects.

5.      Court's Use of Sentencing Guidelines

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense.  The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest.   The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C.  §  3553(a), in determining the Defendant's sentence.   The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct; pursuant to U.S.S.G. §

12

Defendant's initials  *L. K.*

1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6.   Agreements Regarding Sentencing Guidelines

    a.   Use of Information

Nothing in this agreement precludes the Government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range.

    b.   Acceptance of Responsibility

If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the Government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) based on Defendant's timely notification of her intention to enter a guilty plea.

7.   Agreement to Special Condition

In addition to any conditions of sentence imposed by the Court, the Government will recommend to the U.S. Probation Office and the Court at sentencing, and the Defendant agrees not to oppose, that the Defendant will be prohibited from engaging in the preparation of immigration applications on behalf of non-U.S. citizens, including but not limited to applications for B-2 tourist visas and petitions for H-2B visas, or directing or supervising the preparation of immigration applications, whether on behalf another entity or in her individual capacity, without the approval of the Probation Office, as a special condition of the Court's sentence.

13

Defendant's initials _L. K._

8.    Dismissal of Other Counts

At sentencing, the Government will move to dismiss any other Counts of the Indictment that remain pending against Defendant.

9.    Cooperation

a.    Complete and Truthful Cooperation Required

Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in the Indictment and any related offenses. Defendant shall fully and truthfully disclose her knowledge of those offenses and shall fully and truthfully answer any question put to her by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. Defendant's benefits under this agreement are conditioned only on her cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

b.    Motion for Reduction in Sentence Based on Cooperation

The Government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the Government that the Defendant's sentence be reduced.

14

Defendant's initials _L.K._

10.    <u>Financial Obligations and Agreements</u>

   a.  <u>Restitution and Forfeiture</u>

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific count to which Defendant is pleading guilty.  Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.  The Government agrees not to seek civil or criminal forfeiture of the defendant's conveyance, including any vessel, vehicle or aircraft, and any property, real or personal.

   b.  <u>Special Assessment</u>

Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

   c.  <u>Required Financial Disclosures</u>

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all her assets and financial interests, whether held directly or indirectly, solely or jointly, in her name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office.  Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office.  Defendant also authorizes

Defendant's initials _ℒ. 𝒦_

the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

   d.  <u>Financial Examination</u>

   Defendant will submit to an examination under oath on the issue of her financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

   e.  <u>No Transfer of Assets</u>

   Defendant certifies that she has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations and forfeiture created by this Agreement or that may be imposed upon her by the Court at sentencing. Defendant promises that she will make no such transfers in the future.

   f.  <u>Material Change in Circumstances</u>

   Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

   g.  <u>Enforcement</u>

   Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations and forfeiture imposed by the

16

Defendant's initials _L. K._

judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

11.   <u>Waivers</u>

  a.   <u>Waiver of Appeal</u>

  Defendant entirely waives her right to a direct appeal of her conviction and sentence on any ground (including any argument that the statute to which the Defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of her sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs her attorney not to file an appeal.

  b.   <u>Waiver of Collateral Attack</u>

  Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack her conviction and sentence based on a claim of ineffective assistance of counsel.

17

Defendant's initials _____

c.     FOIA and Privacy Act Waiver

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d.     Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a Defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or her plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

12.   Defendant's Rights

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which she will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

18

Defendant's initials _L. K._

13.    <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice given and the work performed by her attorney.

14.    <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw her guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the Government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the Government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

15.    <u>Entire Agreement</u>

This agreement contains the entire agreement between the Government and Defendant.

----------------------------------NOTHING ELSE FOLLOWS----------------------------------

Defendant's initials ____

KENNETH A. POLITE, JR.
ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Frank Rangoussis*

7/25/2021
_____
Date

_____
Frank G. Rangoussis
Trial Attorney
Human Rights and Special Prosecutions Section

*John-Alex Romano*

07/25/2021
_____
Date

_____
John-Alex Romano
Trial Attorney
Human Rights and Special Prosecutions Section

DAVID H. ESTES
ACTING UNITED STATES ATTORNEY

_____
Date

_____
Karl I. Knoche
Chief, Criminal Division

7/26/2021
_____
Date

_____
Alejandro V. Pascual IV
Georgia Bar No. 142495
Assistant United States Attorney
United States Attorney's Office
Southern District of Georgia
P.O. Box 2017
Augusta, Georgia 30903
T: (706) 826-4537
andy.pascual@usdoj.gov

20

Defendant's initials _____

I have read and carefully reviewed this agreement with my attorney.  I understand each provision of this agreement, and I voluntarily agree to it.  I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

7/23/2021
_____
Date

*Larisa Khariton*
_____
Larisa Khariton
Defendant

I have fully explained to Defendant all of her rights, and I have carefully reviewed each and every part of this agreement with her.  I believe that she fully and completely understands it, and that her decision to enter into this agreement is an informed, intelligent, and voluntary one.

07/23/2021
_____
Date

_____
Brian Joseph Huffman, Jr.
Defendant's Attorney

21

Defendant's initials *L. K.*